IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

UNITED STATES OF AMERICA

v.                                                          CASE NO. 5:01-cr-00022-RH-AK

BILLY JOE BUCHANAN,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

    This matter is before the Court on Doc.186, Amended Motion to Vacate, and Doc. 187, supporting memorandum, by Billy Joe Buchanan.[1] The Government has filed its reply, Doc. 194, and Defendant has filed a reply. Doc. 199. This cause is therefore in a posture for decision. Having carefully considered the matter, the Court recommends that the motion to vacate be denied.

**BACKGROUND**

    Defendant and a co-defendant, Ellie Vines, IV, were indicted for conspiracy to manufacture, distribute, and possess with intent to distribute more than fifty (50) grams of methamphetamine and more than five hundred (500) grams of a mixture containing a detectable amount of methamphetamine and for possession with intent to distribute more than five (5) grams of methamphetamine. Doc. 1. Before trial, the Government filed an Information and

---

[1] This cause was administratively re-assigned to the undersigned on August 31, 2007.

Notice of Intent advising Defendant that it intended to seek enhanced penalties at sentencing based on a prior felony drug conviction. Doc. 18.

Shortly before trial, Vines pled guilty as to the conspiracy count and a separate court against him solely. Docs. 40-43.

At trial, Defendant was represented by Elizabeth Timothy. She focused her defense on the character and reputation of the Government's witnesses, e.g., by pointing out their drug use, their arrests, their lack of credibility, and their "hope for some benefit from the government by virtue of their testimony," Doc. 159 at 172, and on exculpation, i.e., Defendant neither possessed nor distributed the drugs found in Vines' house. During the course of trial, the Court, on several different occasions, advised Defendant that while he "should talk with Ms. Timothy about [testifying] and consider her advice," the decision regarding whether to testify in his own behalf "is ultimately yours, not hers...." Doc. 128 at 335; *see also* Doc. 129 at 519-20, 527 and 581. At the end of Defendant's case, counsel announced:

> For the record, I did speak with Mr. Buchanan yesterday at the close of business about whether or not to testify, and he indicated that he wanted to hear all of the case before he made the final decision, although he was leaning towards not testifying.
>
> Now, having heard everything, we have consulted again, and Mr. Buchanan does not want to testify, and we are ready to rest.

Doc. 129 at 581. The Court then specifically questioned Defendant: "Mr. Buchanan, as I told you earlier, that's your decision. Is that your decision?" Defendant responded, "Yes, sir." *Id*.

The jury found Defendant not guilty of the conspiracy charge but guilty of possession with intent to distribute methamphetamine "in the total amount of five (5) grams or more[.]" Doc. 115. Defendant was sentenced to 360 months imprisonment. Docs. 141 & 142.

On appeal, Defendant was represented by Michael Ufferman. In that proceeding, Defendant raised five claims that the Court erred by:

> (1) denying his motion to suppress evidence seized as a result of the execution of a search warrant at codefendant Ellie Vines's house...(2) allowing the prosecutor to make prejudicial remarks in his closing argument; (3) concluding that there was sufficient evidence to support his conviction; (4) applying an enhancement pursuant to U.S.S.G. § 4B1.1; and (5) refusing to depart downward based on Buchanan's assertion that the U.S. Attorney has a policy of seeking enhancements under 21 U.S.C. § 851 in every case.

Doc. 179. The court found no error and affirmed. *Id*. More particularly, the court held:

> Buchanan argues that the district court erred by concluding that there was sufficient evidence because the government did not prove that he had the required knowledge for a possession of methamphetamine with intent to distribute conviction. According to Buchanan, because the methamphetamine was concealed in a hutch, the government had to prove constructive possession. He contends that the record does not support such a finding, as there is insufficient evidence that Buchanan lived with Vines. He argues in the alternative that the government merely proved possession and did not prove possession with intent to distribute.
>
> * * *
>
> We conclude that the district court did not err in determining that there is sufficient evidence to prove that Buchanan lived in Vines's downstairs bedroom and that he possessed methamphetamine. Vines testified that Buchanan moved in with him in late July or early August 2001, and that Buchanan stayed in the downstairs bedroom, where he installed a deadbolt lock on the bedroom door. Police searching Vines's residence found Buchanan undressed in the downstairs bedroom. Moreover, clothing found in the downstairs bedroom was consistent with testimony describing Buchanan's appearance. Evidence in the record indicates that the 16.2 grams of methamphetamine were found in the downstairs bedroom, and that other items related to the manufacture and use of methamphetamine, including a Coleman fuel can with Buchanan's fingerprints on it, were found there and in and around the downstairs bathroom. Thus, the evidence is sufficient to prove that Buchanan was in constructive possession of the methamphetamine.
>
> The evidence is also sufficient to prove that Buchanan intended to distribute the methamphetamine....Russell Eddins...a regular methamphetamine user, testified

>   that he could use three to six grams of methamphetamine in one to two weeks. Eddins sold a quarter ounce of methamphetamine, or six grams, to Buchanan for $300. Thus, 16.2 grams of methamphetamine would last about five and a half weeks...for an experienced used, and was worth over $800. We therefore conclude that the evidence was sufficient to prove that Buchanan intended to distribute the methamphetamine he possessed.

*Id*.

The court also found that the Court did not err in enhancing Defendant's sentence as a career offender based on a 1994 conviction for escape and a 1999 conviction for possession with intent to distribute MDMA, ecstacy. *Id*.

Defendant then filed a motion to vacate, and in response to the Court's order, an amended motion to vacate. In the amended motion, Defendant claims that trial counsel was ineffective "for interfering" with his right to testify and for "failing to request the jury be instructed that simple possession of methamphetamine is a lesser included offense of possession with intent to distribute methamphetamine." Doc. 186. He also argues that Mr. Ufferman was likewise ineffective for failing the "pursue this issue on appeal." *Id*. Defendant further maintains that Timothy was ineffective for failing to inform the Court at sentencing "that the sentence was limited to no more than ten (10) years pursuant to 21 U.S.C. § 841(b)(1)(D) because the indictment did not allege and the jury did not find beyond a reasonable doubt whether non-injectable powder methamphetamine was properly rescheduled from Schedule III to Schedule III...." *Id*. Again, he claims that Ufferman "failed to pursue this issue on appeal."

**DISCUSSION**

  1. Right to testify and instruction on possession.

Defendant does not dispute that he discussed the issue of whether he should testify with counsel. Doc. 188, App. 5. He maintains, however that Timothy "never informed me that possession of methamphetamine is a lesser included offense of possession with intent to distribute methamphetamine and I was entitled to a jury instruction on simple possession," *id*., and that if he had known that possession was a lesser included offense, he would have testified as follows:

> I was a user and not a seller of methamphetamine; on the evening of Friday 28 September 2001 Mr. Vines and I went to work out at Lee's Gym; after working out Mr. Vines and I returned to Mr. Vines' residence to shower and get dressed to go out to a country and western bar; at about 8 p.m. Mr. Vines left the residence to run some errands; I was preparing to take a shower when the Panama City Police executed the search warrant and found the Crown Royal bag containing the sixteen (16) grams of methamphetamine; I knew Mr. Vines kept methamphetamine at his residence; and I anticipated using methamphetamine with Mr. Vines.

*Id*.

Defendant does not really contend that counsel violated his inherent right to testify. Instead, his argument is that he now disagrees with part of the strategy she used at trial, namely, that the drugs recovered in Vines' house were not his. In that situation, *Strickland v. Washington*, 466 U.S. 668 (1984), controls.

To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland*, 466 U.S. at 686. The court may dispose of the claim if a defendant fails to carry his burden of proof on either

the performance or the prejudice prong. *Id*. at 697. The court need not address the adequacy of counsel's performance when a defendant fails to make a sufficient showing of prejudice. *Id.; see also Tafero v. Wainright*, 796 F.2d 1314, 1319 (11th Cir. 1986).

With regard to the performance prong of *Strickland*, a defendant must provide factual support for his contentions that counsel's performance was constitutionally deficient. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987). The court must consider counsel's performance in light of all of the circumstances at that time and indulge in a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance. *Strickland*, 466 U.S. at 689-90. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted). This standard is objective, and "it matters not whether the challenged actions of counsel were the product of a deliberate strategy or mere oversight." *Gordon v. United States*, 496 F.3d 1270, 1281 (11th Cir. 2007). "The relevant question is not what actually motivated counsel, but what reasonably could have motivated counsel." *Id*. When the court "can conceive of a reasonable motivation for counsel's actions," it can deny the claim of ineffectiveness without evidentiary hearing. *Id*. "An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption...that [counsel] did what he should have done and that he exercised reasonable professional judgment." *Chandler v. United States*, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000) (en banc), *cert. denied*, 531 U.S. 1204 (2001). "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules

would interfere with counsel's independence–which is also constitutionally protected–and would restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001). "To uphold a lawyer's strategy, [the Court] need not attempt to divine the layer's mental processes underlying the strategy." *Chandler*, 218 F.3d at 1315 n.16. "No lawyer can be expected to have considered all of the ways [to provide effective assistance]." *Id*. Quite importantly,

> If a defense lawyer pursued course A, it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of course A was not a deliberate choice between course A, course B, and so on. The lawyer's strategy was course A. And [the Court's] inquiry is limited to whether this strategy, that is, course A, might have been a reasonable one.

*Id*.

To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome." *Id*. Additionally, prejudice is established only with a showing that the result of the proceeding was fundamentally unfair or unreliable. *Lockhart v. Hill*, 506 U.S. 364, 370 (1993).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail...are few and far between." *Chandler*, 218 F.3d at 1313 (11th Cir. 2000). This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather

whether a reasonable lawyer could have acted in the circumstances as defense counsel acted. *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000), *cert. denied*, 534 U.S. 903 (2001).

In this Court's view, it was reasonable for counsel to use an exculpation defense, and she did not act deficiently in taking that course. By focusing on a defense that nothing in the bedroom where Defendant retreated when officers executed the search warrant, except personal items, belonged to Defendant, counsel kept the jury's attention away from the methamphetamine manufacturing ingredients which not only were in that room but also could be connected to Defendant through receipts and fingerprints and secured a not guilty verdict on the conspiracy to manufacture charge. If Defendant had testified as he now suggests, he would have added nothing about his drug use that the jury had not heard from others, and he would have opened himself to questions regarding his prior convictions, including a 1999 conviction for possession of Ecstacy with intent to distribute; his lack of verifiable, legitimate employment; and his source of funds to purchase and color coordinate his outfits with expensive shoes and sunglasses and to indulge a penchant for knives and watches.

Furthermore, a request for a simple possession instruction would not have been successful even if Defendant had testified regarding his drug use. Defendant was entitled to a lesser included offense instruction only "if the evidence would permit a rational jury to find him guilty of the lesser offense and not the greater." *United States v. Catchings*, 922 F.2d 777, 780 (11th Cir. 1991). "In the specific context of possession and distribution of drugs, this circuit has held that where the factual issues are the same for both the lesser offense of possession and the greater offense of distribution, the instruction on possession is not required." *Id*. While there is no dispute that Defendant abused drugs and even perhaps that he could consume larger quantities

of methamphetamine than some of his friends and acquaintances, according to the testimony, the amount of methamphetamine recovered from the bedroom, 16.2 grams, is an amount far exceeding that associated with personal consumption.

Furthermore, when a defendant relies on an exculpatory defense that, if believed, would lead to acquittals on both the greater and lesser charges, he is not entitled to an instruction on the lesser included offense. *United States v. Brown*, 26 F.3d 119, 120 (11th Cir. 1994). Here, the use of the "it ain't mine" defense would have led to acquittals on both simple possession and on the distribution charge because if Defendant did not possess the methamphetamine, he could not have been convicted of the distribution charge.

In short, Timothy did not interfere with Defendant's right to testify and she did not act deficiently in pursuing the defense she chose or in not requesting a frivolous instruction. Consequently, Ufferman was not deficient in failing to raise these issues on appeal.

2.  Scheduling of methamphetamine.

In this claim, Defendant argues that counsel was ineffective for failing to argue that "the rescheduling of non-injectable methamphetamine from Schedule III to Schedule II increased the statutory maximum in violation of *Apprendi*." Doc. 187 at 10. This claim is patently frivolous. Methamphetamine was rescheduled to a Schedule II drug in 1971, and the process by which the rescheduling occurred has been upheld by every court that has considered it, including the Eleventh Circuit. *United States v. Lane*, 931 F.2d 40, 41 (11th Cir. 1991). *Apprendi* has no application in the administrative and legislative scheduling of a drug, and Defendant has cited to no authority to support such a proposition. Thus, neither trial nor appellate counsel was ineffective for failing to raise an obviously meritless argument.

**CONCLUSION**

Having carefully considered the matter, the Court finds no merit to any of Defendant's claims. Accordingly, it is respectfully **RECOMMENDED** that the motion to vacate, Doc. 186, be **DENIED**.

**IN CHAMBERS** at Gainesville, Florida, this  __20th__  day of February, 2008.

*s/ A. KORNBLUM*
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**